| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
|---|---|---|
| COUNTY OF RICHLAND | ) | |
| | ) | |
| BEJAY HARLEY | ) | CIVIL ACTION COVERSHEET |
| Plaintiff(s) | ) | 2010 CP 40 03778 |
| vs. | ) | |
| | ) | |
| RICHLAND COUNTY PUBLIC DEFENDERS OFFICE, RICHLAND COUNTY CORONER'S OFFICE, PALMETTO HEALTH, DR. CLAY NICHOLS, and RICHLAND COUNTY | ) | |
| Defendant(s) | ) | |

(Please Print)
Submitted By: Tara Dawn Shurling
Address: Law Office of Tara Dawn Shurling, PA
3614 Landmark Dr., Suite D
Columbia, SC 29204

SC Bar #: 5099
Telephone #: 803-738-8622
Fax #: 803-738-1600
Other:
E-mail: tdslaw@shurlinglaw.com

NOTE: The cover sheet and information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law. This form is required for the use of the Clerk of Court for the purpose of docketing. It must be filled out completely, signed, and dated. A copy of this cover sheet must be served on the defendant(s) along with the Summons and Complaint.

## DOCKETING INFORMATION *(Check all that apply)*
*\*If Action is Judgment/Settlement do not complete*

☒ **JURY TRIAL** demanded in complaint.   ☐ **NON-JURY TRIAL** demanded in complaint.
☐ This case is subject to **ARBITRATION** pursuant to the Court Annexed Alternative Dispute Resolution Rules.
☒ This case is subject to **MEDIATION** pursuant to the Court Annexed Alternative Dispute Resolution Rules.
☐ This case is exempt from ADR. (Proof of ADR/Exemption Attached)

## NATURE OF ACTION *(Check One Box Below)*

| Contracts | Torts - Professional Malpractice | Torts – Personal Injury | Real Property |
|---|---|---|---|
| ☐ Constructions (100) | ☐ Dental Malpractice (200) | ☐ Assault/Slander/Libel (300) | ☐ Claim & Delivery (400) |
| ☐ Debt Collection (110) | ☒ Legal Malpractice (210) | ☐ Conversion (310) | ☐ Condemnation (410) |
| ☐ Employment (120) | ☐ Medical Malpractice (220) | ☐ Motor Vehicle Accident (320) | ☐ Foreclosure (420) |
| ☐ General (130) | Previous Notice of Intent Case # | ☐ Premises Liability (330) | ☐ Mechanic's Lien (430) |
| ☐ Breach of Contract (140) | 20____-CP-____-____ | ☐ Products Liability (340) | ☐ Partition (440) |
| ☐ Other (199) | ☐ Notice/ File Med Mal (230) | ☐ Personal Injury (350) | ☐ Possession (450) |
| | ☐ Other (299) | ☐ Wrongful Death (360) | ☐ Building Code Violation (460) |
| | | ☒ Other (399) 42 U.S.C. §1983 | ☐ Other (499) |

| Inmate Petitions | Judgments/Settlements | Administrative Law/Relief | Appeals |
|---|---|---|---|
| ☐ PCR (500) | ☐ Death Settlement (700) | ☐ Reinstate Driver's License (800) | ☐ Arbitration (900) |
| ☐ Mandamus (520) | ☐ Foreign Judgment (710) | ☐ Judicial Review (810) | ☐ Magistrate-Civil (910) |
| ☐ Habeas Corpus (530) | ☐ Magistrate's Judgment (720) | ☐ Relief (820) | ☐ Magistrate-Criminal (920) |
| ☐ Other (599) | ☐ Minor Settlement (730) | ☐ Permanent Injunction (830) | ☐ Municipal (930) |
| | ☐ Transcript Judgment (740) | ☐ Forfeiture-Petition (840) | ☐ Probate Court (940) |
| | ☐ Lis Pendens (750) | ☐ Forfeiture—Consent Order (850) | ☐ SCDOT (950) |
| | ☐ Transfer of Structured Settlement Payment Rights Application (760) | ☐ Other (899) | ☐ Worker's Comp (960) |
| | | | ☐ Zoning Board (970) |
| | ☐ Other (799) | | ☐ Public Service Commission (990) |
| Special/Complex /Other | | | ☐ Employment Security Comm (991) |
| ☐ Environmental (600) | ☐ Pharmaceuticals (630) | | |
| ☐ Automobile Arb. (610) | ☐ Unfair Trade Practices (640) | | ☐ Other (999) |
| ☐ Medical (620) | ☐ Out-of State Depositions (650) | | |
| ☐ Other (699) | ☐ Motion to Quash Subpoena in an Out-of-County Action (660) | | |
| | ☐ Sexual Predator (510) | | |

Submitting Party Signature: *Tara D. Shurling*     Date: 6/4/10

Note: Frivolous civil proceedings may be subject to sanctions pursuant to SCRCP, Rule 11, and the South Carolina Frivolous Civil Proceedings Sanctions Act, S.C. Code Ann. §15-36-10 et. seq.

SCCA / 234 (01/2010)     Page 1 of 2

**FOR MANDATED ADR COUNTIES ONLY**
Allendale, Anderson, Beaufort, Colleton, Florence, Greenville, Hampton, Horry, Jasper, Lexington, Pickens (Family Court Only), Richland, Union and York

SUPREME COURT RULES REQUIRE THE SUBMISSION OF ALL CIVIL CASES TO AN ALTERNATIVE DISPUTE RESOLUTION PROCESS, UNLESS OTHERWISE EXEMPT.

**You are required to take the following action(s):**

1. The parties shall select a neutral and file a "Proof of ADR" form on or by the 210th day of the filing of this action. If the parties have not selected a neutral within 210 days, the Clerk of Court shall then appoint a primary and secondary mediator from the current roster on a rotating basis from among those mediators agreeing to accept cases in the county in which the action has been filed.

2. The initial ADR conference must be held within 300 days after the filing of the action.

3. Pre-suit medical malpractice mediations required by S.C. Code §15-79-125 shall be held not later than 120 days after all defendants are served with the "Notice of Intent to File Suit" or as the court directs. (Medical malpractice mediation is mandatory statewide.)

4. Cases are exempt from ADR only upon the following grounds:

    a. Special proceeding, or actions seeking extraordinary relief such as mandamus, habeas corpus, or prohibition;

    b. Requests for temporary relief;

    c. Appeals

    d. Post Conviction relief matters;

    e. Contempt of Court proceedings;

    f. Forfeiture proceedings brought by governmental entities;

    g. Mortgage foreclosures; and

    h. Cases that have been previously subjected to an ADR conference, unless otherwise required by Rule 3 or by statute.

5. In cases not subject to ADR, the Chief Judge for Administrative Purposes, upon the motion of the court or of any party, may order a case to mediation.

6. Motion of a party to be exempt from payment of neutral fees due to indigency should be filed with the Court within ten (10) days after the ADR conference has been concluded.

Please Note:    **You must comply with the Supreme Court Rules regarding ADR.**
                **Failure to do so may affect your case or may result in sanctions.**

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | |
| | ) | FIFTH JUDICIAL CIRCUIT |
| COUNTY OF RICHLAND | ) | |
| | ) | |
| BEJAY HARLEY, | ) | CASE NO.: _____ |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| v. | ) | SUMMONS |
| | ) | |
| RICHLAND COUNTY PUBLIC DEFENDERS OFFICE, RICHLAND COUNTY CORONER'S OFFICE, PALMETTO HEALTH, DR. CLAY NICHOLS, and RICHLAND COUNTY, DEFENDANTS. | ) ) ) ) ) ) ) | |

*[Filed stamp: JEANETTE W. McBRIDE C.C.P. & G.S. 2010 JUN -4 PM 1:54 RICHLAND COUNTY FILED]*

TO THE DEFENDANTS ABOVE NAMED:

YOU ARE HEREBY SUMMONED and required to answer the Complaint in this action, of which a copy is herewith served upon you, and to serve a copy of your Answer to said Complaint on the subscribed, Tara D. Shurling, Esquire, 3614 Landmark Drive, Suite D, Columbia, South Carolina 29204, within THIRTY (30) days after service hereof, exclusive of the date of such service, and if you fail to answer the Complaint within the time aforesaid, judgment by default will be rendered against you for the relief demanded in the Complaint.

/s/ Tara D. Shurling
TARA DAWN SHURLING
Attorney and Counselor at Law
Law Office of Tara Dawn Shurling, PA
3614 Landmark Dr., Suite D
Columbia, South Carolina 29204
803-738-8622
ATTORNEY FOR PLAINTIFF

Columbia, South Carolina
June 4        , 2010.

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | |
| COUNTY OF RICHLAND | ) | FIFTH JUDICIAL CIRCUIT |
| | ) | |
| BEJAY HARLEY, | ) | CASE NO.: _____ |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| v. | ) | COMPLAINT |
| | ) | (JURY TRIAL DEMANDED) |
| RICHLAND COUNTY PUBLIC DEFENDERS OFFICE, RICHLAND COUNTY CORONER'S OFFICE, PALMETTO HEALTH, DR. CLAY NICHOLS, and RICHLAND COUNTY, DEFENDANTS. | ) | |

THE PLAINTIFF, COMPLAINING OF THE DEFENDANTS, alleges the following and requests the following relief:

1) The Plaintiff, Bejay Harley, is a citizen and resident of Richland County, South Carolina.

2) The Defendant Richland County Public Defender's Office is a municipal department located in Richland County, South Carolina.

3) The Defendant Richland County Coroner's Office is a municipal department located in Richland County, South Carolina.

4) The Defendant Palmetto Health is a non-profit corporation organized under the laws of South Carolina with its principal place of business in Richland County, South Carolina.

5) Upon information and belief, the Defendant Dr. Clay Nichols is a resident of, and conducts regular business in, Richland County, South Carolina.

1

6) At all times relevant to this action, Defendant Dr. Clay Nichols was an employee of Defendant Palmetto Health, which contracted with Defendant Richland County Coroner's Office to provide forensic pathologists, such as Defendant Dr. Nichols, to conduct autopsies for Defendant Richland County Coroner's Office.

7) The Defendant Richland County is a municipality located in the State of South Carolina, which operates Defendant Richland County Public Defender's Office and Defendant Richland County Coroner's Office.

8) The parties hereto in all matters alleged herein are within the jurisdiction of this Honorable Court.

9) On August 18, 2003, the Defendant Dr. Clay Nichols conducted an autopsy on the Plaintiff's girlfriend, Courtney Grace, who had died the previous day. Dr. Nichols conducted the autopsy for Defendants Richland County Coroner's Office and Richland County while under contract with Defendant Palmetto Health. Defendant Dr. Nichols concluded that Ms. Grace died as a result of blunt force trauma and determined that the cause of death was homicide.

10) On August 18, 2003, the Plaintiff was arrested for murder in connection with the death of his Ms. Grace. He was indicted for this offense on September 17, 2003, by the Richland County Grand Jury.

11) The Plaintiff was represented on this charge by Defendant Richland County Public Defender's Office and its agents, including, but not limited to, Douglas S. Strickler, Esquire, Jason S. Chehoski, Esquire, LaNelle DuRant, Esquire, and Jeanette Van Ginhoven, Esquire. At no point in time prior to the Plaintiff's

judgment for voluntary manslaughter was the Plaintiff represented by an attorney not employed by Defendant Richland County Public Defender's Office.

12) On August 16, 2005, the Plaintiff pleaded guilty to the lesser-included offense of voluntary manslaughter and was sentenced to fifteen years imprisonment. The Plaintiff was represented at this proceeding by Assistant Public Defenders LaNelle DuRant and Jeanette Van Ginhoven.

13) On June 8, 2006, the Plaintiff filed an Application for Post-Conviction Relief with the Richland County Clerk of Court.

14) In a written report dated May 30, 2008, Dr. Stanton C. Kessler, a forensic pathologist, concluded that Ms. Grace died solely of natural causes due to the rupture of an arteriovenous malformation (AVM). This report was delivered to the Plaintiff's Post-Conviction Relief attorney on June 5, 2008. An affidavit reaffirming this conclusion is attached to this Complaint as Attachment 1.

15) On November 6, 2008, the Honorable William P. Keesley filed an Order granting the Plaintiff's Application for Post-Conviction Relief and vacating the Plaintiff's conviction for voluntary manslaughter. The Order found that employees of the Defendants were ineffective in their representation of the Plaintiff because:

a. They failed to discover that the autopsy report authored by Defendant Dr. Clay Nichols contained an unmistakable error when it documented the diseased state of Ms. Grace's gallbladder when in fact Ms. Grace's gallbladder had been surgically removed in 1994. Defendant Richland County Public Defender's Office's employees had in their possession all of Ms. Grace's medical records during their representation of the Plaintiff.

3

b. They failed to hire an independent expert to review Defendant Dr. Nichols' autopsy report, which would have led them to the discovery that the Plaintiff is innocent of any homicide.

## FOR A FIRST CAUSE OF ACTION
(Legal Malpractice)

16) The allegations of the foregoing paragraphs are repeated and incorporated herein as if set forth verbatim.

17) The Plaintiff is innocent of homicide (including murder, voluntary manslaughter, and involuntary manslaughter) in connection with the death of his girlfriend Courtney Grace, since Ms. Grace died of natural causes.

18) The Defendants and their agents represented the Plaintiff on his criminal charge for murder from the time he was arrested until his plea to voluntary manslaughter.

19) Due to this attorney-client relationship, Defendants Richland County and Richland County Public Defender's Office and their agents owed the Plaintiff a duty of care to properly defend him against the murder charge.

20) These Defendants and their agents breached the duty of care and were grossly negligent in failing to adequately investigate the circumstances of Ms. Grace's death and by failing to hire an independent expert to review Dr. Nichols' findings with regard to the cause of death. An affidavit from Desa M. Ballard, Esquire, an expert in the field of legal malpractice, concluding that the Defendant and its agents were professionally negligent in their representation of the Plaintiff is attached to this Complaint as Attachment 2.

21) The Plaintiff suffered extensive damages as a result of these Defendants' grossly negligent breach of the duty of care.

4

22) These Defendants' grossly negligent breach of the duty of care proximately caused the Plaintiff's damages.

23) As a result, the Plaintiff has suffered damages including, but not limited to, the following:

   a. The extreme emotional and physical pain and suffering he has endured from being falsely accused and imprisoned for causing Ms. Grace's death;

   b. Economic loss from the loss of potential employment due to his false imprisonment;

   c. Loss of reputation in the community;

   And will likely suffer from the effects of the Defendants' actions now and in the future. Accordingly, the Plaintiff demands actual, consequential, and punitive damages from the Defendants.

24) Defendant Richland County Public Defender's Office, as employers of attorneys Strickler, Chehoski, DuRant, and Van Ginhoven, and Defendant Richland County, as operator of Richland County Public Defender's Office, are liable for their actions pursuant to the South Carolina Tort Claims Act, S.C. Code Ann. §15-18-10 *et seq.*

**FOR A SECOND CAUSE OF ACTION**
(Violation of 42 U.S.C. §1983—Violation of Due Process and Civil Rights—Fourth and Fourteenth Amendments—Gross Negligence)

25) The allegations of the foregoing paragraphs are repeated and incorporated herein as if set forth verbatim.

26) Defendants Richland County Coroner's Office, Palmetto Health, Dr. Clay Nichols, and Richland County (hereinafter referred to as "Defendants" for causes

5

of action two through four) were acting under the color or pretense of State law, customs, practices, usage or policy at all times mentioned herein as medical personnel, supervisors or other such personnel and/or employees and had certain duties imposed upon them with regard to the Plaintiff.

27) In conducting Ms. Grace's autopsy, Defendant Dr. Nichols was grossly negligent in

   a. Failing to conduct the autopsy under regularly accepted standards in the field;
   b. Noting the diseased nature of an organ which had been removed years earlier;
   c. Failing to note the presence of an AVM which ruptured;
   d. Failing to determine that Ms. Grace died as a result of natural causes;
   e. Determining that Ms. Grace died as a result of a homicide.

28) Dr. Nichols conducted the autopsy for Defendants Richland County Coroner's Office and Richland County while under contract with Defendant Palmetto Health.

29) As a direct and proximate result of the Defendants' acts of gross negligence, jointly, severally, and in combination thereof, the Plaintiff suffered deprivations of his rights secured by the Fourth and Fourteenth Amendments to the United States Constitution.

30) As a result, the Plaintiff has suffered damages including, but not limited to, the following:

   a. The extreme emotional and physical pain and suffering he has endured from being falsely accused and imprisoned for causing Ms. Grace's death;

b. Economic loss from the loss of potential employment due to his false imprisonment;

c. Loss of reputation in the community;

And will likely suffer from the effects of the Defendants' actions now and in the future. Accordingly, the Plaintiff demands actual, consequential, and punitive damages from the Defendants.

### FOR A THIRD CAUSE OF ACTION
(Violation of 42 U.S.C. §1983—Violation of Due Process and Civil Rights—Fourth, Eighth, and Fourteenth Amendments—False Arrest)

31) The allegations of the foregoing paragraphs are repeated and incorporated herein as if set forth verbatim.

32) Defendants were acting under the color or pretense of State law, customs, practices, usage or policy at all times mentioned herein as medical personnel, supervisors or other such personnel and/or employees and had certain duties imposed upon them with regard to the Plaintiff.

33) In conducting Ms. Grace's autopsy, Defendant Dr. Nichols was grossly negligent in

   a. Failing to conduct the autopsy under regularly accepted standards in the field;

   b. Noting the diseased nature of an organ which had been removed years earlier;

   c. Failing to note the presence of an AVM which ruptured;

   d. Failing to determine that Ms. Grace died as a result of natural causes;

   e. Determining that Ms. Grace died as a result of a homicide.

7

34) Dr. Nichols conducted the autopsy for Defendants Richland County Coroner's Office and Richland County while under contract with Defendant Palmetto Health.

35) As a direct and proximate result of the Defendants' acts of gross negligence, jointly, severally, and in combination thereof, the Defendants provided false information leading to a finding of probable cause to falsely arrest the Plaintiff for the crime of murder. Consequently, the Plaintiff suffered deprivations of his rights secured by the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution.

36) As a result, the Plaintiff has suffered damages including, but not limited to, the following:

   a. The extreme emotional and physical pain and suffering he has endured from being falsely accused and imprisoned for causing Ms. Grace's death;

   b. Economic loss from the loss of potential employment due to his false imprisonment;

   c. Loss of reputation in the community;

   And will likely suffer from the effects of the Defendants' actions now and in the future. Accordingly, the Plaintiff demands actual, consequential, and punitive damages from the Defendants.

**FOR A FOURTH CAUSE OF ACTION**
(Violation of 42 U.S.C. §1983—Violation of Due Process and Civil Rights—Fourth, Eighth, and Fourteenth Amendments—False Imprisonment)

37) The allegations of the foregoing paragraphs are repeated and incorporated herein as if set forth verbatim.

38) Defendants were acting under the color or pretense of State law, customs, practices, usage or policy at all times mentioned herein as medical personnel, supervisors or other such personnel and/or employees and had certain duties imposed upon them with regard to the Plaintiff.

39) In conducting Ms. Grace's autopsy, Defendant Dr. Nichols was grossly negligent in

   a. Failing to conduct the autopsy under regularly accepted standards in the field;

   b. Noting the diseased nature of an organ which had been removed years earlier;

   c. Failing to note the presence of an AVM which ruptured;

   d. Failing to determine that Ms. Grace died as a result of natural causes;

   e. Determining that Ms. Grace died as a result of a homicide.

40) Dr. Nichols conducted the autopsy for Defendants Richland County Coroner's Office and Richland County while under contract with Defendant Palmetto Health.

41) As a direct and proximate result of the Defendants' acts of gross negligence, jointly, severally, and in combination thereof, the Plaintiff was falsely convicted of the charge of voluntary manslaughter, a crime of homicide in the State of South Carolina, which caused the Plaintiff to be falsely imprisoned. Consequently, the Plaintiff suffered deprivations of his rights secured by the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution.

42) As a result, the Plaintiff has suffered damages including, but not limited to, the following:

a. The extreme emotional and physical pain and suffering he has suffered from being falsely accused and imprisoned for causing Ms. Grace's death;

b. Economic loss from the loss of potential employment due to his false imprisonment;

c. Loss of reputation in the community;

And will likely suffer from the effects of the Defendants' actions now and in the future. Accordingly, the Plaintiff demands actual, consequential, and punitive damages from the Defendants.

**WHEREFORE**, the Plaintiff prays for judgment for actual, consequential, and punitive damages in an amount commensurate with the losses sustained on his own behalf including, but not limited to, the following:

a. The extreme emotional and physical pain and suffering he has endured from being falsely accused and imprisoned for causing Ms. Grace's death;

b. Economic loss from the loss of potential employment due to his false imprisonment;

c. Loss of reputation in the community;

d. The costs and disbursements of this action; AND

e. For such other and further relief as this Court may deem just and proper.

TARA DAWN SHURLING
Attorney and Counselor at Law

Law Office of Tara Dawn Shurling, PA
3614 Landmark Dr., Suite D
Columbia, South Carolina 29204
803-738-8622

3:10-cv-02711-JFA     Date Filed 10/20/10     Entry Number 1-1     Page 14 of 20

JAMES W. FAYSSOUX, JR.
Attorney and Counselor at Law

Fayssoux Law Firm, PA
P.O. Box 10207
Greenville, South Carolina 29603
864-233-0445

ATTORNEYS FOR PLAINTIFF

BY: _____
TARA DAWN SHURLING

Columbia, South Carolina

June 4, 2010.

11

ATTACHMENT 1

| | |
|---|---|
| STATE OF SOUTH CAROLINA ) | IN THE COURT OF COMMON PLEAS |
| ) | |
| COUNTY OF RICHLAND ) | FIFTH JUDICIAL CIRCUIT |
| ) | |
| BEJAY HARLEY, ) | CASE NO.: _____ |
| ) | |
| PLAINTIFF, ) | |
| ) | |
| v. ) | AFFIDAVIT OF DR. STANTON KESSLER |
| ) | |
| RICHLAND COUNTY PUBLIC ) | |
| DEFENDER'S OFFICE, RICHLAND ) | |
| COUNTY CORONER'S OFFICE, and ) | |
| RICHLAND COUNTY, ) | |
| ) | |
| DEFENDANTS. ) | |

PERSONALLY appeared before me, Dr. Stanton C. Kessler, who being duly sworn, deposes and says:

1. I am a licensed forensic pathologist and I have performed over 12,000 autopsy procedures over the last 31 years. A copy of my curriculum vitae is attached to this affidavit.

2. In connection with the Plaintiff's Post-Conviction Relief action, I had the opportunity to review Courtney Grace's autopsy records, including histological slides taken during the autopsy.

3. After my review of the autopsy records, it was my conclusion, to greater than a reasonable degree of medical certainty, that Ms. Grace died from a spontaneous subarachnoid and subdural hemorrhage secondary to a ruptured arteriovenous malformation of the blood vessels of the right cerebral cortex of the brain unrelated to external trauma.

4. This conclusion is supported by the fact that there is no physical evidence of gross trauma to Ms. Grace's scalp, skull, brain, periostium of the skull, epidural space or subdural space. No contusions, pattern abrasions, lacerations or abrasions of the skin, fractures of the skull or contusions of the brain tissue were seen. Thus, there was a total absence of any trauma significant enough to have any possible causal link to the subarachnoid and subdural hemorrhage. This conclusion is consistent with the fact that ruptures of arteriovenous malformations of the blood vessels are unrelated to external trauma. Upon close examination of

the histological slides of brain tissue taken during this autopsy there was revealed evidence of chronic bleeding considerably predating the death of the decedent. During the autopsy, the scalp was not shaved to look for external trauma, as is the standard protocol in any autopsy where the medical history reveals the subject is thought to have died from a brain hemorrhage. Absent this step in the external evaluation, it is often very hard, if not impossible, to see external scalp trauma that is not gross in nature. While the absence of this step in the autopsy in question is troublesome, it had no direct impact on my findings inasmuch as this subject clearly died from a rupture of the arteriovenous malformations of the blood vessels in her brain, completely unrelated to external trauma

5. In my opinion it is not possible that the decedent could have received a head trauma significant enough to have contributed to the rupture in question without damaging any of the above mentioned structures covering the brain. As I testified in the Post-Conviction Relief proceeding, it is my professional opinion that the decedent's manner of death should have been classified as natural causes not a homicide.

6. In my opinion, the conclusion reached by the forensic pathologist who performed the autopsy—Dr. Clay Nichols—that Ms. Grace died as a result of blunt force trauma was an incorrect conclusion and constituted professional negligence.

_____
Stanton C. Kessler, M.D.

SWORN TO before me this 13th day of May, 2010.

_____(L.S.)
Notary Public for South Carolina
My Commission Expires: 3/12/2013

2

ATTACHMENT 2

| | |
|---|---|
| STATE OF SOUTH CAROLINA ) | IN THE COURT OF COMMON PLEAS |
| COUNTY OF RICHLAND ) | FIFTH JUDICIAL CIRCUIT |
| ) | |
| BEJAY HARLEY, ) | CASE NO.: _____ |
| ) | |
| PLAINTIFF, ) | |
| ) | |
| v. ) | **AFFIDAVIT OF DESA BALLARD** |
| ) | |
| RICHLAND COUNTY PUBLIC ) | |
| DEFENDER'S OFFICE, RICHLAND ) | |
| COUNTY CORONER'S OFFICE, and ) | |
| RICHLAND COUNTY, ) | |
| ) | |
| DEFENDANTS. ) | |

PERSONALLY appeared before me, Desa Ballard, Esquire, who being duly sworn, deposes and says:

1. I am over the age of eighteen (18) years and am competent to state the matters set forth herein. I have personal knowledge of the matters stated herein, except those matters stated on information and belief, and as to those, I have a good faith basis for believing them to be true.

2. I am a member of the South Carolina Bar, having been admitted in 1983. I am also licensed to practice law in the United States District Court for the District of South Carolina, numerous United States Courts of Appeals, and the United States Supreme Court. I am a member or former member of certain committees of the South Carolina Bar, including the Ethics Advisory Committee, Professional Responsibility Committee (for which I served as chair) and the Unauthorized Practice of Law Committee. I am a member of the Commission on Lawyers Helping Lawyers, the Administrative Law Court Rules Committee and a founding member of the South Carolina Association of Ethics Counsel. I am a member of the ABA Center for Professional Responsibility and the Association of Professional Responsibility Lawyers. I



1

lecture frequently in the area of professional responsibility and legal ethics, serve as an Adjunct Professor of Law at the University of South Carolina School of Law. A large part of my practice focuses on legal ethics and professional responsibility, including representation of judges, lawyers and medical professionals before their respective licensing Boards. I have served as an expert witness in legal malpractice cases, both for the plaintiff and the defendant.

3.   I have been asked by counsel for the plaintiff to review this matter and to offer my preliminary expert opinion as to the professional negligence of the Defendant Richland County Public Defender with respect to its representation of the plaintiff in connection with his criminal defense of a charge of murder filed against him in Richland County South Carolina.

4.   In connection with this action, I have had the opportunity to review the Order granting the Plaintiff Post-Conviction Relief based upon the ineffective assistance of counsel. I have also reviewed notes from the testimony at the Post-Conviction Relief hearing held on September 23, 2008. For purposes of this affidavit, I assume the accuracy of the factual conclusions set forth in the Order.

5.   On information and belief, Plaintiff was prosecuted for murder based, in part, by an autopsy report authored by Dr. Clay Nichols which found that the death of the decedent Courtney Grace was a homicide. Plaintiff was represented by the Richland County Public Defender's office and attorneys therein during his trial court proceedings. He was originally convicted by a jury of murder, after which time the trial judge set aside the verdict. Following the verdict being set aside, Plaintiff pleaded guilty to voluntary manslaughter.

6.   Dr. Nichols' autopsy report on the decedent contained a determination that the decedent's gallbladder "demonstrated mild autolysis" on review. This was an error, because medical records reflect that the decedent's gallbladder has been surgically removed in 1994, making the finding of a diseased gallbladder on autopsy impossibility. Knowledge of this finding should have made Dr. Nichols' autopsy report highly suspect and certainly subject to meaningful impeachment at trial.

7.   On information and belief, the Richland County Public Defendant's office has in its possession the medical records of the decedent, which reflected the surgical removal of the



2

decedent's gallbladder in 1994, both before the murder trial and before the guilty plea. A review of these records by or on behalf of the defense team should have discovered this obvious error in Dr. Nichols' autopsy report. The defense team should have made this information available to the Plaintiff no later than prior to his guilty plea to voluntary manslaughter.

6. Based on admissions made by Plaintiff's criminal defense counsel, LaNelle DuRant, who was an employee of the Defendant Richland County Public Defender's Office ("Defendant") at the time she represented the Plaintiff, Ms. DuRant had all of the medical records of decedent Courtney Grace in her possession prior to the Plaintiff's plea. Ms. DuRant admitted that she failed to review Ms. Grace's medical records in conjunction with the autopsy report prepared by Dr. Clay Nichols. Accordingly, she admitted that she failed to discover Ms. Grace's gallbladder had been surgically removed in 1994.

7. It appears undisputed that the Richland County Public Defender's Office obtained the medical records of the alleged victim in this case prior to the Plaintiff's jury trial and conviction for murder. After that judgment was set aside by presiding, the Plaintiff was advised by his defense counsel to plead guilty to voluntary manslaughter.

8. Based on the findings of the PCR judge, Plaintiff was represented at trial by the Chief Public Defender for Richland County, Douglas S. Strickler. Public Defender Strickler did not impeach the testimony of Dr. Nichols with the victim's medical records. Neither did he present testimony from an independent expert in the field of pathology. Thereafter, this case was reassigned to Assistant Public Defender DuRant who advised the Plaintiff to accept a deal to plead guilty to voluntary manslaughter without reviewing the medical records of the victim and without obtaining an opinion from an independent expert in the field of pathology. In my opinion, the failure of both Public Defender Strickler and Assistant Public Defender DuRant to comprehensively review Ms. Grace's medical records constituted professional negligence.

9. In my opinion, the discovery of the gallbladder error in the autopsy should have prompted the Richland County Public Defender's Office to hire an outside expert to review Ms. Grace's medical records and the autopsy performed by Dr. Nichols. In my judgment, the assertion that the victim died as a result of a brain bleed caused by external trauma *in the absence of any physical evidence of damage to the scalp or any of the tissues between the scalp and the hemorrhage* should, *in and of itself,* have been sufficient to have prompted the hiring of an



3

independent expert. Those facts, coupled with the blatant autopsy error concerning the victim's gallbladder, made the failure hire such an expert grossly negligent.

10. Ms. DuRant admitted that she did not seek funding for or hire an expert to counter the testimony of Dr. Nichols. As demonstrated at the Plaintiff's Post-Conviction Relief hearing, the hiring of an expert would have resulted in the discovery that Ms. Grace died of natural causes and not by blunt force trauma. Consequently, in my opinion, the failure to hire an expert to review Ms. Grace's medical records and the autopsy performed by Dr. Nichols constituted professional negligence on the part of both Douglas S. Strickler and LaNelle DuRant.

5. For the reasons set forth above, in my professional opinion this complaint raises a meritorious action for attorney malpractice against the Richland County Public Defender's Office. The Plaintiff alleges that he is innocent of the charge against him. The findings of the PCR judge support his position. Therefore, this action should be permitted to proceed on the basis of the gross negligence of the Plaintiff's defense counsel, and also based of the requirements for an action for criminal legal malpractice pursuant to Brown v. Theos, 345 S.C. 626, 550 S.E.2d 304 (2001).

_____
Desa Ballard
Attorney at Law

SWORN TO before me this 24th
day of May, 2010.

_____ (L.S.)
Notary Public for South Carolina
My Commission Expires: 11-28-17.

4