IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Bejay Harley, | ) | C/A No.: 3:10-2711-JFA |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| Richland County Public Defenders, | ) | **ORDER** |
| Office, Richland County Coroner's | ) | |
| Office, Palmetto Health, Dr. Clay | ) | |
| Nichols, and Richland County, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter comes before the court on Defendant Richland County Public Defender's Office's ("Defendant") motion for summary judgment. Having reviewed the parties' briefs and welcomed oral argument, the court grants Defendant's motion.

**BACKGROUND**

Plaintiff Bejay Harley was arrested on August 18, 2003, and charged with the murder of his girlfriend. According to state prosecutors, the victim died during the afternoon of August 17, 2003, as a result of blunt force trauma sustained during an alleged altercation between herself and Plaintiff on August 16, 2003. Plaintiff's murder trial commenced in January of 2005, and he was represented by the Richland County Public Defender's Office. During the trial, a forensic pathologist, Defendant Dr. Clay Nichols, served as an expert witness for the prosecution. In that role, he testified that blunt force trauma resulting in a subdural hematoma was the cause of the victim's death, despite there being no signs of

external trauma to the victim's head. Ultimately, the jury found Plaintiff guilty of murder; however, the trial judge granted him a new trial due to errors that occurred during the trial. Prior to his new trial, Plaintiff pled guilty to voluntary manslaughter on August 16, 2005.

On June 8, 2006, Plaintiff filed a pro se application for post-conviction relief based upon ineffective assistance of counsel. His appointed PCR counsel sought and obtained approval for funding for an independent medical expert to review Plaintiff's case file. On June 5, 2008, Plaintiff's PCR counsel received a report from Dr. Stanley C. Kessler, a pathologist, in which he opined that it was not possible that the victim died from blunt force trauma, but rather that she died as a result of long-existing arteriovenous malformations. Therefore, he determined that the victim's death was due to natural causes and not homicide.

On September 23, 2008, the PCR judge presiding over Plaintiff's application found that Plaintiff's defense counsel were ineffective for failing to retain an independent forensic pathologist to review his case and to testify contrary to the findings of Dr. Nichols. The PCR judge also determined that Plaintiff's defense counsel were ineffective for failing to impeach Dr. Nichols at trial as to the fact that Dr. Nichols included observations of the victim's gallbladder in his autopsy report, when, in fact, the victim's gallbladder had been removed several years prior to her death. After conducting a hearing regarding Plaintiff's application for post-conviction relief, the judge vacated Plaintiff's guilty plea and granted him a new trial on October 29, 2008. His new trial is scheduled for May 9, 2011. Plaintiff filed the present suit on June 4, 2010, and in response to Plaintiff's legal malpractice claim against it, Defendant Richland County Public Defender's Office moves the court for judgment as a

matter of law on the basis that the applicable statute of limitations bars Plaintiff's legal malpractice cause of action against it.

## **LEGAL STANDARD FOR SUMMARY JUDGMENT**

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment shall be rendered when a moving party has shown that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The court must determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). Summary judgment should be granted in those cases where it is perfectly clear that there remains no genuine dispute as to material fact and inquiry into the facts is unnecessary to clarify the application of the law. *McKinney v. Bd. of Trustees of Mayland Community College*, 955 F.2d 924, 928 (4th Cir. 1992). In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

Plaintiff's claim against the Public Defender's Office involves a state law claim for legal malpractice. Although the other defendants in this action face claims asserted under the United States Constitution pursuant to 42 U.S.C. § 1983, a resolution of the claim presently before the court turns on state law only. Accordingly, in determining whether the claim is time-barred, this court must look to state law to determine the governing statute of limitations, as well as any rules that constitute "an integral part of the state statute of

limitations." *Wade v. Danek Med., Inc.*, 182 F.3d 281, 288–89 (4th Cir. 1999) (internal quotation omitted).

## ANALYSIS

In his complaint, Plaintiff alleges that Defendant owed him a duty of care to properly defend him against his criminal charges, but that it breached this duty by failing to adequately investigate the circumstances of the victim's death and by failing to hire an independent expert[1] to review Dr. Nichols' findings with regard to the cause of death. As noted above, Defendant contends that the two-year statute of limitations under the South Carolina Tort Claims Act has run on Plaintiff's legal malpractice claim. *See* S.C. Code § 15-78-110. To make this argument, Defendant asserts that the statute of limitations began to run on either August 16, 2005, the date that Plaintiff plead guilty to voluntary manslaughter, or on June 8, 2006, the date that Plaintiff filed his application for post-conviction relief in which he asserted a claim for ineffective assistance of counsel. Applying the two-year statute of limitation to either of these dates, it is clear that the limitations period expired prior to Plaintiff's June 4, 2010 filing of this suit. And even if the court were to apply the three-year statute of limitations applied to typical legal malpractice suits, S.C. Code § 15-3-530; *see also Epstein v. Brown*, 363 S.C. 372, 376, 610 S.E.2d 816, 818 (2005) ("South Carolina Code Ann. § 15-3-530 provides a three year statute of limitations for legal

---

[1] Whether or not Defendant hired an independent expert to review the medical records is in sharp dispute. Because the case can be resolved by reference to the statute of limitations alone, this dispute is inconsequential at the present time.

4

malpractice lawsuits."), Defendant points out that Plaintiff's June 4, 2010 filing of his suit remains untimely. The court agrees that under either the two-year or three-year statute of limitations, this action is time-barred under South Carolina state law.

In response, Plaintiff contends that the court should find that neither of these days, August 16, 2005 and June 8, 2006, constitutes the date on which his legal malpractice claim accrued. Instead, he asks the court to find that the earliest date the statute of limitations could have began to run was on June 5, 2008, the date on which Plaintiff's counsel received a report from Dr. Stan Kessler in which he contradicts the findings of Dr. Nichols. Plaintiff urges the court to find that this date triggered the statute of limitations because he contends that he was not made aware of the issues with Dr. Nichol's testimony until this time and, therefore, would not have known that he had a claim against his attorneys. After considering the parties' arguments, the court finds that the statute of limitations bars Plaintiff's legal malpractice claim against Defendant, and it grants Defendant's motion for summary judgment.

In determining the date on which a statute of limitations begins to run, South Carolina courts apply the discovery rule. According to the discovery rule, the statute of limitations begins to run when a cause of action reasonably ought to have been discovered. *Dean v. Ruscon Corp.*, 321 S.C. 360, 364, 468 S.E.2d 645, 647 (1996). The statute runs from the date the injured party either knows or should have known by the exercise of reasonable diligence that a cause of action arises from the wrongful conduct. *Id.* The South Carolina Supreme Court has interpreted the "exercise of reasonable diligence" to mean that

5

the injured party must act with some promptness where the facts and circumstances of an injury place a reasonable person of common knowledge and experience on notice that a claim against another party might exist. *Id.* Moreover, the fact that the injured party may not comprehend the full extent of the damage is immaterial. *Id.*

With this rule in mind, the court believes that, at the latest, Plaintiff should have known that he had a legal malpractice claim against his lawyers on June 8, 2006. On this date, as already discussed, Plaintiff filed his application for post-conviction relief, in which he alleged that his defense counsel offered him ineffective assistance of counsel. In that filing, Plaintiff alleged, under oath, that "no investigation [was] done by [his] counsel." (Def. Mot. for S.J., Ex. 1, ¶ 9.) This language is broad enough to include an assertion that counsel failed to properly examine Dr. Nichols' report and failed to obtain the assistance of other medical professionals in determining if the report was accurate.

The fact that the problems with Dr. Nichols' report was embedded within the application for post-conviction relief filed on June 8, 2006, was reinforced by the findings made by Judge William Keesley, who granted Plaintiff's petition and ordered a new trial. Judge Keesley stated that at the evidentiary hearing on Plaintiff's post-conviction relief petition, Plaintiff "more narrowly defined his allegations." (*Id.*, Ex. 2, at 3.) This language implies, if it does not expressly conclude, that the claim upon which the relief was granted (i.e., the failure to properly evaluate the forensic evidence) was a part of the case from the beginning. This finding by a state court judge, on a matter of pure state law, leads this court to conclude that the state courts of South Carolina would, if presented with this case,

6

conclude that the claim is time-barred under either the two-year or three-year statute of limitations. *See Epstein v. Brown*, 363 S.C. 372, 610 S.E.2d 816 (2005); *Mitchell v. Holler*, 311 S.C. 406, 429 S.E.2d 793 (1993).

While Plaintiff may not have had the benefit of Dr. Kessler's report on the date the post-conviction relief case was filed, his application acknowledges his belief that he had a claim against his attorneys by this date. The court does not believe that the statute of limitations began to run on June 5, 2008, when Plaintiff's counsel received Dr. Kessler's report. Prior to this date, Plaintiff was on notice of the conduct of his attorneys in defending him against the criminal charges, and the South Carolina Supreme Court has made it clear that "the statute of limitations begins to run from this point and not when advice of counsel is sought or a full-blown theory of recovery developed." *Mitchell*, 311 S.C. at 409, 429 S.C. at 795 (internal quotation omitted). Whether the court applies a two-year or three-year statute of limitations to the June 8, 2006 accrual date, the claim would be barred, as Plaintiff did not file his suit until four years later, on June 4, 2010. Moreover, the court does not find that the circumstances of this case warrant equitable tolling. Accordingly, the court grants Defendant Richland County Public Defender's motion for summary judgment and dismisses it from this suit. Because it is no longer a party to this suit, the court finds as moot Defendant's motion to take Plaintiff's deposition.

IT IS SO ORDERED.

*Joseph F. Anderson, Jr.*

April 12, 2011  
Columbia, South Carolina

Joseph F. Anderson, Jr.  
United States District Judge